# WHEELING.

## LEWIS v. ROSLER, SHERIFF.

Submitted June 2, 1879.   Decided December 3, 1881.

*(PATTON, J., Absent.)

1. Under section 4, chapter 218 of the Acts of 1872-3, the interrogatories therein mentioned may be filed to any one or more of the defendants and need not be to all.

2. The remedy provided in said section is a substitute for the *capias ad satisfaciendum* which existed up to 1850.

3. The power given by section 4, chapter 218 of the Acts of 1872-3 to the commissioner to *attach* a defendant, who refuses to answer the interrogatories propounded to him as provided therein, is constitutional.

4. The act authorizing courts to appoint commissioners in chancery is constitutional.

Writ of error and *supersedeas* to an order of the circuit court of the county of Kanawha entered on the 27th day of June, 1878, allowed upon the petition of John D. Lewis.

Hon. Joseph Smith, judge of the seventh judicial circuit, made the order complained of.

JOHNSON, PRESIDENT, furnishes the following statement of the case:

In December 1877 a judgment on writ of error was on reversal of the judgment of the circuit court entered in this Court in favor of Carlon's administrator against John D.

---

*Case submitted before Judge P. took his seat.

Lewis and a number of other parties, which judgment was certified to the court below, the circuit court of Kanawha county. Execution was sent out on the judgment, and interrogatories were filed against two of the defendants only, the said John D. Lewis and John P. Hale, under the provisions of section 4 of chapter 218 of the acts of 1872-3. John D. Lewis refused to answer the interrogatories, because, as he claimed, the plaintiff in the execution had no right to select two of the defendants, to whom interrogatories should be propounded, but that the interrogatories should be propounded to all the defendants or to none. The commissioner issued an attachment against defendant, Lewis, but not until a rule had been served upon him to show cause, why he should not be attached for failing to appear before the commissioner and answer the said interrogatories. The plaintiff's body was attached, and he filed his petition before the circuit court of Kanawha county for a writ of *habeas corpus ad subjiciendum*, which writ issued, and the sheriff, John D. Rosler, made his return to the writ, in which he says: "On the 8th day of June, 1878, the commissioner placed in my hands an attachment issued by him, whereby I was commanded to attach the said J. D. Lewis and J. P. Hale and them safely keep, &c.," a copy of which attachment he filed as a part of his return, and then says: "this attachment is the sole cause of the arrest and detention of the said Lewis." The writ of *habeas corpus* issued on the 18th day of June, 1878; and on the 21st day of the same month the commissioner, D. C. Gallaher, made a report to the court of proceedings had before him on said attachment, in which he says: "the attachment issued by me in said cause against John D. Lewis and John P. Hale, defendants in said cause, for failing to appear and show cause upon a rule issued against them to appear and show cause why they should not be attached, &c. I have filed in said cause a report and asked your Honor's advice as to my duty in the premises; and that report and the papers accompanying the same I respectfully ask to be made part of this report. Your Honor expressed the opinion in open court, that according to the statute it was my duty to issue the attachment. I did so on the 8th of June, 1878, and made said attachment returnable at my office on the 11th day of June, 1878. * * * I now report, that said

John D. Lewis is still in custody and has not been released by me under said attachment, and said J. D. Lewis and J. P. Hale have each of them wholly refused to answer said interrogatories, and each doth refuse to answer any of said interrogatories and each of them remains in contempt of said order of attachment."

On the 27th day of June, 1878, the following order was entered :

"The court, upon mature consideration of the petition of the said Lewis, the return of the sheriff of Kanawha county, the report of D. C. Gallaher, one of the commissioners of this court, the proceedings had before the said commissioners upon interrogatories under —— section of the —— chapter of the Acts of 1872-3, all of which are made part of this order, and after hearing the arguments of counsel is of opinion not to discharge the said Lewis, but doth order, that he be remanded to the care and custody of said sheriff, there to remain until he shall answer the interrogatories propounded to him by the administrator of John Carlon, deceased."

To this order the petitioner, John D. Lewis, obtained from a judge of this court a writ of error and *supersedeas*.

*William A. Quarrier,* for plaintiff in error.

*C. D. Hedrick, George Couch* and *C. E. Doddridge,* for defendants in error.

JOHNSON, PRESIDENT, announced the opinion of the Court :

It is claimed by counsel for plaintiff in error, that in enforcing a writ of *fi. fa.* under chapter 218 of the Acts of 1872-3, the interrogatories therein referred to must be issued to all the defendants in the execution, or to none ; that they cannot be filed to one of several defendants. The language of the statute, section 4, is : "To ascertain the estate, upon which a *fieri facias* is a lien, and to ascertain any real estate, in or out of this State, to which a debtor named in such *·fieri facias* is entitled, the judgment-creditor may file interrogatories to the debtor and a copy of the judgment with a commissioner of the court, whenever the judgment is &c.,   *   *,   who shall issue a summons directed to the sheriff of his county commanding him to summon the defendant to answer, &c.   *   *   The debtor served with such summons and interrogatories shall

within the time prescribed therein file answer upon oath to such interrogatories, &c." There is certainly nothing in this language to support the idea, that the interrogatories must of necessity be propounded to all the defendants. The interrogatories may be filed to any one or more of the defendants, and need not be to all. It would be very inconvenient indeed, if it were required in a case like this, in which the interrogatories were filed, which we are now considering, where there are a great number of defendants, that interrogatories must be filed to all, before any one of the defendants could be required to answer. It might be, that the plaintiff in the execution well knew that some of the defendants were utterly insolvent, and that it would be a fruitless task to file interrogatories to such defendants. The execution could be levied upon the property of any of the defendants, who had visible property, and interrogatories might be filed to any, of whom a discovery of their estate was sought.

It is also insisted, that chapter 218 of the Acts of 1872–3, so far as it authorizes a commissioner to issue an attachment against the person of a citizen, because he had refused to answer such interrogatories, is unconstitutional and void. This Court will presume, that an Act of the Legislature is constitutional, until the contrary clearly appears.

Imprisonment for debt was part of the common law; and it was a common mode to compel the payment of debts to imprison the debtor. Under the law in force in Virginia the *capias ad satisfaciendum* issued, upon a judgment for debt, and to somewhat soften the rigor of the remedy, the debtor under certain circumstances was permitted to have a larger prison than the common jail, and was entitled to the "prison bounds." In the Code of 1819, chapter 134, section 31, the rigor of the remedy was still further softened, and the debtor could be discharged from prison by surrendering his effects and executing conveyance of his lands. In the Code of 1849, for the first time, the writ of *capias ad satisfaciendum* was abolished. Code 1849, chapter 2, page 716. But section 5 of the same chapter provided for filing interrogatories to the debtor, and requiring him to disclose upon oath, what estate real or personal he owned, and provided, that if he failed to answer such interrogatories "or file answers which are deemed by the com-

missioner or alleged by the creditor, his agent or attorney to be evasive, the commissioner shall make report thereof to the court, by which he is appointed ; and said court after service of a notice to or upon the debtor to show cause against it may attach him and compel him to answer either in court or before the commissioner the same or any other interrogatories, which it deems pertinent." Because that provision did not work well, or for some other reason deemed sufficient by the Legislature, on the 15th day of March, 1856, said section 5 was amended by the Legislature, and as so amended has been the law in Virginia and this State without material change ever since.

The section as then amended, and which is now section 4 of chapter 218 Acts of 1872-3, is as follows : "To ascertain the estate, upon which a writ of *fieri facias* is a lien, and to ascertain any real estate in or out of this state, to which a debtor named in such *fieri facias* is entitled, the judgment-creditor may file interrogatories to the debtor and a copy of the judgment with a commissioner of the court, wherein the judgment is in the circuit or county court of the county in which the defendant resides, who shall issue a summons directed to the sheriff of his county commanding him to summon the defendant to answer said interrogatories at a time and place within the county, to be therein specified, not exceeding sixty days from the date of the summons. A copy of the interrogatories shall accompany the summons and be served therewith on the defendant. The debtor served with such summons and interrogatories shall within the time prescribed therein file answer on oath to such interrogatories. If he fail so to do, or file any answers, which are deemed by the commissioner to be evasive, the commissioner, after the service and return-day of the notice to or rule upon the debtor, issued by such commissioner and returnable to a day and place indicated in the process, to show cause against it, may issue an attachment against such debtor, returnable before him on a day and place certain, set out in it, to compel such debtor to answer the interrogatories aforesaid, or any other which he may deem pertinent. But said commissioner shall enter in his proceedings and report to the court, in which the judgment was rendered, any and all objections taken by such

debtor against answering such interrogatories or any or either of them ; and if the court shall afterwards sustain any one or more of such objections the answers given to such interrogatories, as to which objections are sustained, shall be held for naught in that or any other cause."

We have seen by the law, that the Legislature has exercised full power over the remedy for the enforcement of a debt judicially declared to exist, even to the extent of imprisoning the debtor, and in this harsh mode endeavoring to compel the debtor to pay it ; and the constitutionality of such legislation was not called in question. I know of no constitutional prohibition now existing, or that in Virginia or in this State ever did exist, to prevent the Legislature from passing laws, compelling the payment of debts even by depriving the debtor of his liberty. The clerk of the court was by law authorized to issue the *ca. sa.* The present remedy under section 4, chapter 218, Acts of 1872–3, is a substitute for the *ca. sa.* and much less severe ; and it seems to us, if the *ca. sa.* was constitutional, this must be. The present remedy has existed for more than a quarter of a century, and as far as my re-search or knowledge extends, no one has ever before by *habeas corpus* or otherwise questioned its constitutionality. The law has been all that time in operation and acquiesed in by the people. It is not a harsh law. If a man has property liable to the payment of his debts, he ought to disclose it. He will not lose his liberty, unless he refuses to answer the interrogatories, or evades the truth in his answers. Before the present law was passed, he was in the first instance upon the *ca. sa.* thrown into prison, and he could only come out upon disclosing his property and giving it up for the payment of his debts. Now he need not go to prison at all, if he will give straightforward, honest answers to the interrogatories propounded to him. He is fully protected from the consequences of improper interrogatories being propounded, and being compelled to answer them ; for if the interrogatories are improper, the court, to whom report must be made, will sustain his objections to them. The remedy now existing would be almost worthless, if the debtor could defy the commissioner and refuse to answer the questions. While the creditor or commissioner was waiting for the court to con-

vene, a debtor might go out of the jurisdiction of the court. I see no objection to the law, and cannot point to any provision of the Constitution, that it violates. It is but enforcing the collection of debts already judicially determined to exist, and in a less harsh manner than was done for more than a century, without its being held to infringe the principles of *Magna Charta* or of any Constitution.

It is also insisted, that the commissioners being appointed by the circuit courts, their appointment was unconstitutional, because it is contended, that under the requirements of section 8 of article VII of the Constitution they should be appointed by the governor. The act authorizing courts to appoint commissioners in chancery is constitutional. The power confering upon the courts jurisdiction in all cases of equity is sufficient to authorize the Legislature to declare by statute, that courts might appoint commissioners, as it would be impossible for the courts to properly transact their business without such officers; and in the courts is properly lodged the power of their appointment.

We think the court did right in refusing to discharge the petitioner upon the hearing of the *habeas corpus* and in remanding him to the custody of the sheriff, from which custody he could be discharged by simply doing his duty in answering the interrogatories propounded to him by his creditor.

The judgment of the circuit court is affirmed with costs and $30.00 damages.

JUDGES HAYMOND AND GREEN CONCURRED.

JUDGMENT AFFIRMED.